TARA K. McGRATH
United States Attorney
PETER KO
Special Attorney
California State Bar No. 191994
Federal Office Building
880 Front Street, Room 6293
San Diego, California 92101-8893
Telephone: (619) 546-7359
Email: Peter.Ko2@usdoj.gov

Attorneys for Plaintiff
United States of America

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| Jesus Rosario Favela-Astorga,<br><br>Petitioner,<br><br>v.<br><br>United States of America,<br><br>Respondent. | Case No.: 24-cv-00140-DCB<br>Case No.: 11-cr-0150-TUC-DCB(BGM)<br><br>**UNITED STATES' OPPOSITION TO MOTION UNDER 28 U.S.C. § 2255** |

Favela was in an armed robbery crew that hunted marijuana smugglers in the Arizona desert. The crew shot at Border Patrol agents who tried to arrest them. A round killed Agent Brian Terry.

Favela's attorney, Carrillo, negotiated a plea deal which saved Favela from the mandatory sentence of life in prison plus at least 10 more years that he faced if convicted of all charges at trial. Favela's 50-year sentence was below that and below the top of the guideline range which was life. Favela has a chance to leave prison alive when he is older. Others in the crew who did not plead do not. They're serving life. Yet Favela moves to vacate his sentence under 28 U.S.C. 2255, saying Carrillo was ineffective in negotiating his deal and at sentencing.

### 1. The Motion Should Be Dismissed

The first obstacle to Favela's motion is in his plea agreement he waived his "right to collaterally attack [his] conviction and sentence under [section 2255] or any other collateral attack." ECF 966 at 3 (all ECF cites are to the docket in 11-cr-150-TUC-DCB(BGM)). Favela said he had no questions about the clause when the magistrate judge pointed it out at his guilty plea. ECF 999 at 10-11. Collateral attack waivers in knowing, voluntary plea agreements must be enforced. See, e.g., *United States v. Rodriguez*, 49 F.4th 1205, 1211-12 (9th Cir. 2022). Favela does not say his waiver, agreement, or plea were unknowing or involuntary. Making that claim for the first time in reply would be too late. *United States v. Kelly*, 874 F.3d 1037, 1051 n.9 (9th Cir. 2017); *United States v. Lo*, 839 F.3d 777, 787 n.3 (9th Cir. 2016).

### 2. Alternatively, The Motion Should Be Denied

The second obstacle is section 2255 relief is only available for "exceptional circumstances," *Hill v. United States*, 368 U.S. 424, 428 (1962) (internal quotation marks omitted), like prejudicial errors of constitutional significance. See 28 U.S.C. 2255(a). Favela says he was denied the Sixth Amendment right to effective counsel assured by *Strickland v. Washington*, 466 U.S. 668, 686 (1984), and other decisions, in three ways.

    a. One is Carrillo supposedly did not discuss or review the presentence report with him before sentencing. Mtn. 3-4. But Carrillo said at sentencing that they did discuss it. ECF 1000 at 3. Favela, seated next to Carrillo at the time, did not say differently. Favela must prove his allegation by a preponderance, see *Alcala v. Woodford*, 334 F.3d 862, 869 (9th Cir. 2003); see also *Holland v. Jackson*, 542 U.S. 649, 654 (2004) (per curiam), and even if established factually, the error must be so serious that Carrillo's representation, strongly presumed reasonable, was objectively unreasonable to the point that it "amounted to incompetence under 'prevailing professional norms.'" *Harrington v. Richter*, 562 U.S. 86, 104-105 (2011). Favela's contention now is at odds with his silence before, and Carrillo said the opposite over a year ago before he knew this was a question and might have reason to lie. Far from proof by a preponderance, the record suggests the charge is false. And even if the allegation was true and the error was objectively unreasonable, gross incompetence alone is not enough. A

*Strickland* violation also requires that Favela prove prejudice, i.e., a reasonable probability that, without the error, his sentence would have been different. 466 U.S. at 694. He does not address, much less offer facts explaining, how his review of the PSR probably would have changed his sentence.

      b. Next, Favela complains about the deal Carrillo secured. Mtn. 4-5. First, a correction: Favela suggests he pled to "involuntary manslaughter" or "second degree involuntary murder" (there is no such thing) which carried a "maximum 15 year[]" penalty. Mtn. 5. Favela pled guilty to second-degree murder which has a life maximum. There was no ambiguity about that, or any possibility Favela was confused. That is what the indictment charged (ECF 281 at 1-2), what his plea agreement said (ECF 966 at 1-2), what the court told him (ECF 999 at 8), and what his PSR said (ECF 975 at 1). Manslaughter, "involuntary," and a 15-year maximum were never mentioned. The manslaughter statute, 18 U.S.C. 1112 (incorporated by 18 U.S.C. 1114 when U.S. officials are killed), was never cited.

      Favela suggests Carrillo incompetently recommended an "illusory" plea deal that was "akin to life without possibility of release." Mtn. 5. Yet Favela is serving 50 years and potentially eligible for release at age 79 or 80 with good behavior credit. His cohorts who did not plead are in for life, the required sentence for counts Carrillo got dismissed. The benefit is not huge but hardly imaginary. Carrillo's advice to Favela must be viewed "most deferential[ly]" regardless, and "strict adherence to the *Strickland* standard [is] all the more essential when reviewing the choices an attorney made at the plea bargain stage." *Premo v. Moore*, 562 U.S. 115, 122, 125 (2011). But competent counsel is realistic. A federal agent was murdered, Favela's DNA was on gear the robbery crew dropped at the remote scene, Favela admitted he was at the shootout, and every member of the crew survived, making nonsense of his post-arrest claim that the agents—specially trained shooters in elevated positions with optics to see in the dark and the monstrous advantages of concealment and surprise—fired without warning. ECF 975 at 4-7; see also ECF 800 at 190-120, 199-206; ECF 804 at 5-35, 93-102, 149-166. The evidence was strong, and Favela's account of events was absurd. Recommending the choice that gave him a chance at release later in life over no chance was

3

reasonable. Other lawyers have done the same. *United States v. Prior*, 107 F.3d 654, 662 (8th Cir. 1997) ("in the face of a very strong case against Prior," lawyer reasonably recommended deal "secur[ing] an opportunity for Prior to [get] a sentence of less than life imprisonment" even though ultimately received life), and *United States v. Dyess*, 730 F.3d 354, 362-63 (4th Cir. 2013) (similar), are examples.

Favela also claims Carrillo "pledged a maximum sentence of 30 to 35 years" in custody. Mtn. 5. The parties agreed Favela would recommend no less than 420 months (35 years), the prosecution up to 600 months (50 years). The agreement also said the recommendations did not bind the court which had "complete discretion to impose a sentence of up to life imprisonment." ECF 966 at 2. The court verbally told Favela the same when he pleaded guilty. Favela said he understood. ECF 999 at 8-9.

Favela's charge now is dubious on its face. Carrillo knew he could not ask for a sentence below 35 years but "pledged" less? And Favela believed it and said nothing despite his plea agreement and the court both saying he could not ask for under 35 years and could get up to life? At any rate, if "pledged" is meant as a synonym for promised, it is irreconcilable with Favela's assurance to the court under oath that no one had "promised [him] anything" for his plea "other than what is contained here in your written plea agreement." ECF 999 at 7. "[O]rdinarily" collateral attacks that "directly contradict the petitioner's statements" in a plea colloquy "must fail," as the latter "carry a strong presumption of truth." *Muth v. Fondren*, 676 F.3d 815, 821-22 (9th Cir. 2012). Put another way: "In the absence of extraordinary circumstances, allegations in a § 2255 motion that directly contradict the petitioner's sworn statements made during a properly conducted Rule 11 colloquy are always palpably incredible and patently frivolous or false." *Id.* at 822 (cleaned up and quoting *United States v. Lemaster*, 403 F.3d 216, 220-21 (4th Cir. 2005)).

The other possibility is "pledged" means predicted. That still is suspect for the same reasons. But even if true, Favela again must prove prejudice, i.e., "a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985). *Womack v. Del Papa*, 497 F.3d 998,

1003-04 (9th Cir. 2007), holds he cannot. Womack complained his attorney predicted a 30- to 40-year sentence, but the court gave him eight terms of life without parole. *Id.* at 1003. *Womack* the decision said that "[e]ven if Womack's counsel's performance were somehow deemed ineffective, Womack was not prejudiced by his counsel's performance because [like Favela] the plea agreement and the [court's] plea canvass alerted Womack to the potential consequences of his guilty plea." *Id.*

Favela's final complaint about his deal is Carrillo did not "secure a Rule 11(c)(1)(C) cap-plea." Mtn. 4. An 11(c)(1)(C) plea agreement binds the court to a sentence or sentence range agreed to by the parties. If the court wants to impose a different sentence, it rejects the agreement and tells the defendant he may withdraw his plea. See Fed. R. Crim. P. 11(c)(1)(C) & (c)(3)-(5). How a lawyer could err by not insisting on a binding agreement is unclear. It is not a unilateral act. The prosecution gets a vote and, in this case, did not offer and had no interest in one. The other problem with the charge is even if not securing a binding agreement could be objectively unreasonable, Favela must show the result of a proceeding probably would have changed if Carrillo had secured one. See *Strickland*, 466 U.S. at 694. The court sentenced Favela within the range that the parties limited their recommendations to despite not being bound by the recommendations and having discretion to impose up to life. ECF 966 at 2. Binding the court to sentence within the parties' range would not have changed anything.

c. That leaves complaints that Carrillo incompetently "remain[ed] inert"—apparently, did not object—while Favela's sentencing was afflicted by supposed errors. Mtn. 6. (This part of the motion again misstates the crime Favela pled to and the maximum possible penalty. See Mtn. 6-8. Those claims are not addressed again.)

One is Favela says Carrillo did not object to the use of "acquitted conduct" in his sentence. Mtn. 6. Acquitted means found not guilty. Favela was not acquitted of anything. And in any event, considering acquitted conduct at sentencing, if it had happened, is allowed if the conduct is proved by a preponderance. See *United States v. Watts*, 519 U.S. 148 (1997).

The second is Favela suggests Carrillo did not object to the court departing upward based on dismissed or acquitted conduct. See Mtn. 6 (citing departure under "§ 5K1.21,"

5

which doesn't exist, and probably meaning 5K2.21). But the guideline's existence shows there is nothing wrong in principle with a departure on this basis. In any case, the court did not depart. It had no need to. Favela's advisory range was already 360 months to life before departures. ECF 973 at 2-3 (base offense level 38 for second-degree murder, +6 for assaulting law enforcement officer, -2 for acceptance, for total offense level 42, criminal history category II); ECF 1000 at 6.

Three, Favela says Carrillo did not object to "uncharged . . . conduct form[ing] the main basis of" the court's reasons for his sentence under 18 U.S.C. 3553(a). Mtn. 6. This too is allowed and even required. USSG § 1B1.3 says the court "shall" consider relevant conduct which often is uncharged, and 18 U.S.C. 3661 says "[n]o limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which [a court] may receive and consider for the purpose of imposing an appropriate sentence." The claim is also, again, wrong factually. The court did not mention any uncharged conduct. It just cited the same facts that Favela admitted in his guilty plea to second-degree murder. (His responsibility for the murder rested on it being a foreseeable consequence and within the scope of the marijuana robbery conspiracy, see *Pinkerton v. United States*, 328 U.S. 640 (1946), so his admissions included facts establishing the conspiracy.)

Here is what Favela admitted in his plea agreement and orally:

> 1. [Favela] entered into an agreement with others to steal loads of marijuana from individuals . . . . In order to accomplish this, members of the conspiracy would . . . (3) use [] firearms to intimidate marijuana smugglers into giving up their loads of marijuana.
> . . .
>
> 2. . . . Around December 10, 2010, [Favela and others] entered the United States without obtaining the consent of United States authorities. The purpose of that illegal entry into the United States was to rob marijuana loads from smugglers . . .
> . . .
>
> 4. . . . [The conspirators] retrieved firearms and food supplies that had been hidden in the area by others. Each of the five conspirators carried a firearm. [Favela] carried a loaded AK-47-type assault rifle.

> [5. T]hey began looking for drug smugglers to rob. On December 14, 2010, while they were looking for drug smugglers to rob, the conspirators encountered Border Patrol agents. Members of the conspirators' group exchanged fire with the agents. One of the shots fired by a conspirator killed Border Patrol Agent Brian Terry.

ECF 966 at 7-8; ECF 999 at 15-18.

And here is what the court said to explain its sentence:

> [Y]ou came into this country unlawfully, you entered illegally, that you obtained a firearm, which was loaded, with the intent therefor to use that firearm, not necessarily against a law enforcement officer, but to use it in some manner or to fire it – otherwise, it would not be loaded; you wouldn't have it in the first place – and at the very least, intend to rob people at gunpoint.
>
> As a result of all this illegal activity, a law enforcement [officer] of the United States government was killed. To reflect the seriousness of that offense, I'm going to commit you for a term of 600 months, or 50 years, in prison.

ECF 1000 at 18-29.

### 3. No Evidentiary Hearing Is Needed

Favela's motion therefore should be dismissed as waived by his plea agreement, without an evidentiary hearing. Or it should be denied outright, also without an evidentiary hearing.

No evidentiary hearing is needed if the motion fails to allege specific facts that would entitle Favela to relief or if the allegations are "so palpably incredible or patently frivolous as to warrant summary dismissal." *United States v. McMullen*, 98 F.3d 1155, 1159 (9th Cir. 1996) (internal quotation marks omitted); *United States v. Mejia-Mesa*, 153 F.3d 925, 929 (9th Cir. 1998). The allegation about reviewing the PSR does not mention prejudice, let alone allege facts about how Favela's sentence probably would have changed. *Strickland* requires error and prejudice for a violation. 466 U.S. at 694. This fails to state an ineffective assistance claim that would entitle Favela to relief.

Carrillo already said in the plea agreement that he recommended Favela take the deal. ECF 966 at 9. So those "material facts are not in dispute—they either entitle [Favela] to relief or they don't—"and a hearing on that point is unnecessary. *Mitchell v. United States*, 790 F.3d 881, 886 (9th Cir. 2015).

7

A suggestion that Carrillo promised a 30- to 35-year sentence (if that is what is meant by "pledged") contradicts Favela's denial of unwritten promises at the Rule 11 hearing, making such a claim now "palpably incredible and patently frivolous or false" under *Muth*, 676 F.3d at 822, and a hearing unnecessary under *McMullen*, 98 F.3d at 1159, and other decisions. A hearing also is pointless if pledged means predicted. The plea agreement and the Rule 11 hearing warned Favela he could get up to life. He cannot show prejudice. *Womack*, 497 F.3d at 1003-04.

Whether a lawyer could be incompetent for not obtaining a binding plea agreement when the prosecution did not offer and would not have agreed to one is an issue of law, not a factual dispute that requires evidence to resolve. A hearing also is not required if a contention "fail[s] to meet *Strickland*'s prejudice requirement" regardless. *United States v. Birtle*, 792 F.2d 846, 849 (9th Cir. 1986). Binding the court to the range the parties limited themselves to would not have changed anything. The court sentenced within that range.

Last: the record conclusively proves untrue Favela's contentions about the charge, penalty, and supposed use of acquitted conduct, an upward departure, and uncharged conduct to determine his sentence. A hearing is unnecessary if "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief," 28 U.S.C. 2255, such as when a claim obviously is "contradicted by the record." *United States v. Quan*, 789 F.2d 711, 715 (9th Cir. 1986).

The motion should be dismissed or denied without an evidentiary hearing.

DATED:  August 2, 2024

Respectfully submitted,

TARA K. McGRATH
United States Attorney
Southern District of California

/s/ Peter Ko

PETER KO
Special Attorney

8

# UNITED STATES DISTRICT COURT

# DISTRICT OF ARIZONA

| | |
|---|---|
| Jesus Rosario Favela-Astorga,<br><br>Petitioner,<br><br>v.<br><br>United States of America,<br><br>Respondent. | Case No.: 24-cv-00140-DCB<br>Case No.: 11-cr-0150-TUC-DCB(BGM)<br><br>**CERTIFICATE OF SERVICE** |

I certify that on the date below, I caused a copy of the attached pleading to be mailed to Petitioner at his last known address, as follows:

Jesus Rosario Favela-Astorga, Reg. No. 32888-508, USP Atwater, U.S. Penitentiary, P.O. Box 019001, Atwater, California, 95301.

DATED: August 2, 2024.

/s/Peter Ko
PETER KO
